# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7962 | **DATE** | 1/3/2001 |
| **CASE TITLE** | Victoria Schooler vs. Allied Tube & Conduit Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's Motion for Summary Judgment is granted in part and denied in part. Status hearing before Magistrate Judge Nolan set for January 17, 2001 at 10:00 a.m. in courtroom 1858.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 2 number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | JAN 4 2001 date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | IS docketing deputy initials |
| | Copy to judge/magistrate judge. | |

Document Number

26

courtroom deputy's initials

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAN – 4 2001

| | | |
|---|---|---|
| VICTORIA SCHOOLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 98 C 7962 |
| | ) | |
| | ) | Magistrate Judge Nan R. Nolan |
| ALLIED TUBE & CONDUIT CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Victoria Schooler ("Schooler"), a current employee of Allied Tube & Conduit Corporation ("Allied"), brings this action against Allied. Schooler alleges that Allied discriminated against her based on her gender,[1] and retaliated against her for opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981a and § 2000e et seq. Defendant Allied moves for summary judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

---

[1] In her Complaint, Schooler also asserted a claim of discrimination based upon race, but, in her Response to Allied's Motion for Summary Judgment, Schooler concedes she has no claim for race discrimination. (Pl.'s Resp. Def.'s Mot. Summ. J. at 1, footnote 1.)

# I. **FACTUAL BACKGROUND**[2]

This case involves Schooler's bids on two positions at Allied, one in 1994 and one in 1997, and the outcome of the bidding process for those positions. In August of 1994, Schooler bid on the position of Off-Line Set-Up Helper, which she was awarded, only for that position to be eliminated. Schooler ultimately successfully grieved the elimination of this position, and was reinstated and awarded the back pay and overtime that she lost, however, she claims that the position was eliminated because of discrimination based on her gender. Schooler claims she is entitled to additional damages other than back pay and overtime. The second bid at issue in this case is Schooler's bid in December, 1997 for the position of Off-Line Set-Up.[3] According to Allied, Schooler was not awarded this position because she did not have the necessary qualifications, while Schooler claims her failure to receive this position was the also result of discrimination.

## A. The Parties

Schooler was hired by Allied on March 13, 1978, as a laborer. (Def.'s Statement of Material Facts, ¶ 16.) She is currently employed by Allied in the position of Off-Line Set-Up Helper. (Id. ¶ 17.) Jackson Potts is a former employee of Allied, who held the position of Mill Foreman when he left. (Id. ¶ 12.) Jim Sells is a former employee of Allied, who held the position of Production Manager before he left the company. (Id. ¶ 13.) Leon Frison is a current

---

[2] The following facts are taken from the parties' Local Rule 56.1(a)(3) & (b)(3) Statements and accompanying exhibits and are undisputed unless indicated otherwise.

[3] The Off-Line Set-Up position and the Off-Line Set-Up *Helper* position are two different positions at Allied.

employee of Allied in the position of Off-Line Set-Up. (Id. ¶ 5.) Robert Delya is a current

employee of Allied in the position Off-Line Set-Up. (Id. ¶ 7.)

## B. The Collective Bargaining Agreement and Bidding Process

The bid on the Off-Line Set-Up Helper position in August, 1994 was controlled by the

collective bargaining agreement ("CBA") between Allied and the United Steel Workers of

America Union Harvey Local 6939 ("Union") which is dated April 12, 1993. (Def.'s Statement

of Material Facts, ¶ 18.) The bid on the Off-Line Set-Up position in December of 1997 was

controlled by the collective bargaining agreement ("CBA 96") between Allied and the Union

dated April 11, 1996. (Id. ¶ 19.) Some aspects of the relationship between Allied and the Union

are not written, but oral, based upon past practices that the parties to the CBA and CBA 96 have

used. (Id. ¶ 21.) The bidding process is governed by Section 8.2 of the CBA. (Id. ¶ 22.)

Pursuant to the CBA and the past practices of the parties to the CBA, there is a difference

between craft and non-craft positions at Allied. (Def.'s Statement of Material Facts, ¶ 23.)

Generally, a craft position may only be obtained through a craft training apprenticeship program,

however, there are some instances in which employees who previously held the classification of a

craft position were grandfathered into the position without having to undergo the apprenticeship

program. (Id. ¶ 24; Pl.'s Resp. Def.'s Statement of Material Facts, ¶ 24.)[4] A craft position may

also be awarded to an individual who has currently or previously held the classification of that

particular position, or an employee who has not yet completed the apprenticeship program but

---

[4] Plaintiff disputes Defendant's contention that a craft position may be obtained only through undergoing the apprenticeship program, and Defendant does concede that two employees, Leon Frison and Dan Briney, were grandfathered into the Off-Line Set-Up position. However, both men had held the classification of Set-Up on Six Mill prior to being grandfathered into the position. (Def.'s Reply to Pl.'s Resp. to Def.'s Statement of Material Facts, at 2.)

who is enrolled in the program at the time she bids on the position. (Id. ¶ 56.) The Off-Line Set-Up Helper position is a non-craft position. (Def.'s Statement of Material Facts, ¶ 25.) Craft jobs are designated at the time the position is posted that only "qualified bidders" need apply, and only qualified people can bid on the job pursuant to the CBA. (Id. ¶ 27, 28.) The posting for the Off-Line Set-Up position dated December 10, 1997, indicated that "only qualified bidders need apply." (Id. ¶ 29.)

## C. Off-Line Set-Up Position

The parties dispute whether the Off-Line Set-Up position is a craft position requiring apprenticeship training or a non-craft position. Allied, in its Statement of Material Facts, initially claims that "[t]he Tube Mill Set-Up position is commonly referred [to] as Off-Line Set-Up by Allied employees and so shall be referenced in this motion to avoid confusion." (Def.'s Statement of Material Facts, ¶ 18.) This would imply that Off-Line Set-Up and Tube Mill Set-Up are two different titles for the exact same position, however, Schooler asserts that they are actually two different jobs, and, moreover, that the Off-Line Set-Up job is not a craft position. (Pl.'s Resp. Def.'s Statement of Material Facts, ¶¶ 26, 30.) In fact, Schooler is correct that Off-Line Set-Up and Tube Mill Set-Up are two different positions rather than two different titles for the same position, as Allied concedes in its Reply brief. (Def.'s Reply Mem. Supp. Mot. Summ. J. at 9.) However, the dispute remains as to whether it is a craft or non-craft position.

Allied presents the following evidence in support of its contention that Off-Line Set-Up is a craft position. The CBA, in Article 33, Part C, includes a list of non-craft positions for the purpose of delineating the length of the training period for each. (Def.'s Mem. Supp. of Mot. Summ. J., Ex. 3 at 57.) While Off-Line Set-Up Helper is listed as a non-craft position, Off-Line

Set-Up is not. (Id. at 58.) This list, however, does not purport to be exhaustive, as it notes at the end that "[o]ther training periods shall be established by the Company as required with notification of the period given to the Union. (Id. at 59.) Another indication that Off-Line Set-Up is a craft job requiring the apprenticeship is the notation on the job posting that "only qualified bidders need apply," (Def.'s Mem. Supp. Mot. Summ. J., Ex. 4), which Schooler concedes is the usual indication that the position is a craft position. (Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 27, 28.)

Further evidence supporting Allied's contention that Off-Line Set-Up is a craft position is the grade level of the position. There is no dispute that the Tube Mill Set-Up position is a craft position, and Off-Line Set-Up and Tube Mill Set-Up are both listed as Grade Level 27. (Def.'s Mem. Supp. Mot. Summ. J., Ex. 3, Collective Bargaining Agreement, App. A.) Off-Line Set-Up Helper is a Grade Level 12 position. (Def.'s Mem. Supp. Mot. Summ. J., Ex. 8.)

Additional evidence submitted by Allied in support of its contention that Off-Line Set-Up is a craft position are the deposition testimonies of Daniel Briney (pp. 52), Jackson Potts (pp. 40), Luther Willis Bennet (pp. 43-45), Jim Sells (pp. 30-31), and Leon Frison (pp. 44). All of them testified that the position is a craft position. One final piece of evidence which supports Allied's contention regarding the nature of the Off-Line Set-Up is its submission of the job description for the Off-Line Set-Up position. (Id., Ex. 20.) The description is, in fact, a copy of the Tube Mill Set-Up job description, with "Off-Line # 6" handwritten in the "Job Title" box above the words "Tube Mill Set-Up."

Schooler presents three excerpts of deposition testimony in support of her assertion that the Off-Line Set-Up position is a non-craft position. The first is the deposition of Jackson Potts,

who was a foreman at Allied in the six mill and the Off-Line Set-Up job from 1981 through 1996. (Potts Dep. at 8.) Potts testified that there was no apprenticeship program for the Off-Line Set-Up job while he worked at Allied. (Id. at 38.)

The second deposition is of Sylvester Givens, who is currently an Off-Line Set-Up Helper at Allied. His testimony is somewhat hard to classify, though, as the substance of his testimony regarding the nature of the Off-Line Set-Up position is that it is a craft position, but that it does not require an apprenticeship. For example, Givens states at several points that there is no agreement for Off-Line Set-Up apprentices, and that Off-Line Set-Up is not part of the apprenticeship agreement. (Givens Dep. at 25, 26, & 59.) When asked if Off-Line Set-Up is a craft or non-craft position under the CBA, he stated: "According to the collective bargaining agreement, it's non-existent, technically, because there's no training program or apprenticeship program for off-line set-up." (Id. at 59.) However, when the issue of the Off-Line Set-Up position's status in 1991 came up, the following exchange occurred:

> Q. In 1991, what happened that made [the off-line set-up position] part of the [collective bargaining] agreement?
> A. Because the company decided to make off-line set-up a craft position.
> Q. Okay. So off-line set-up is a craft position?
> A. As of 1991, but no apprenticeship program.
> Q. So if Mrs. Schooler bid on the off-line setup position in 1997 or 1998, at that point, it was designated as a craft position?
> A. It should have been as a trainee position.

(Givens Dep. at 60.) Further testimony over the next several pages in his deposition reveals that Givens believes that the Off-Line Set-Up position is awarded on the basis of seniority and treated generally like a non-craft position, despite the fact that he agrees that it is a craft position. (Id. at 60-66.) Givens later agrees that craft positions are designated at the time the job is posted that

"only qualified bidders need apply." (Id. at 66.) Overall, Givens' deposition testimony indicates confusion on his part as to the distinction between a craft and non-craft position, and his testimony that Off-Line Set-Up is a craft position, but yet is treated as a non-craft position for bidding purposes is at odds with what both sides agree to be the requirements for being awarded a craft position.

Schooler's third reference is to Stephen Kramer's deposition, who's position at Allied is Mill Operator. (Kramer Dep. at 6.) He also is the grievance chairman for the Union. (Id.) He testified that there is not any formal training for the Off-Line Set-Up position, except for the set-up apprenticeship program, which incorporates Off-Line Set-Up. (Id. at 8, 12-13.) Kramer also described a dispute between the Union and Allied over what the requirements should be for the Off-Line Set-Up job, in terms of whether a person who was working in the Off-Line Set-Up area already (i.e., in the position of Off-Line Set-Up Helper) had the qualifications to take the position or whether an apprenticeship was needed. (Id. at 10-12.) Kramer testified that it was, at least initially, the Union's position that someone like Schooler should be awarded the Off-Line Set-Up position, even though she had not gone through the apprenticeship program. (Id. at 12.)

The information provided by these depositions does not support Schooler's position. The testimony of these three witnesses indicates that the training program for the Off-Line Set-Up position was less established than training programs for other craft positions, but that Off-Line Set-Up is a craft position, and the set-up apprenticeship incorporates Off-Line Set-Up training. If the apprenticeship was not required for the Off-Line Set-Up position, there is no reason for Off-Line Set-Up training to be included in the apprenticeship program. Overall, the Court does not believe that these depositions are sufficient to create a genuine issue of material fact as to

whether the position of Off-Line Set-Up is a craft or non-craft position. At most, these

depositions demonstrate that the apprenticeship for Off-Line Set-Up is less formalized than the

apprenticeships for other craft positions, but that Off-Line Set-Up is a craft position and it does

require an apprenticeship or previous classification in the Off-Line Set-Up position.

The apprenticeship program for set-up is a two-year program which requires a total of

4,000 hours of training comprised of both on-the-job and classroom training. (Def.'s Statement

of Material Facts, ¶ 35.)[5] Apprentices are required to take a minimum of 288 hours of job

related instruction which is mostly conducted at Prairie State College, with required courses in

Essentials of Drafting; Drafting Conventions and Symbols; Fundamentals of Hydraulics;

Electricity for Non-Electrical Tradesmen; Preparatory Mathematics; Modern Metal Removal

Processes; Characteristics of Ferrous Metals, Tools and Equipment; First Aid; and Industrial

Safety. (Id. ¶ 36.)[6]

**D. Off-Line Set-Up Helper Position**

The primary function of the Off-Line Set-Up Helper position, according to the position

description, is to assist in off-line set-ups on mills. (Def.'s Statement of Material Facts, ¶ 35; Ex.

10.) The Position Description also states, in its Working Procedure Section, that the helper

should possess a good working knowledge of the mill; have the ability to assist in off-line set-ups

---

[5] Schooler disputes this statement, and all other statements relating to the apprenticeship, to the extent that Schooler disputes the fact that an apprenticeship is required at all for the position of Off-Line Set-Up.

[6] Schooler asserts that this statement is not supported by the cited reference, which is Exhibit 11, page 92. Schooler is correct, in that Allied's Exhibit 11 does not contain a page 92, however, Allied's Exhibit 3 (CBA 96) contains a duplicate of Allied's Exhibit 11 which does include page 92, and it does contain support for the statement. CBA 96 is the CBA which governed Schooler's bid for the Off-Line Set-Up position.

as per instructions by the set-up man, be on call 24 hours a day; be able to accept shift reassignments on 30 minutes notice; be able to dissemble, replace roll stands, die sets, and any related process tooling; and communicate with the setup man for related problems. (Pl.'s Resp. Def.'s Statement of Material Facts, ¶ 31.) The Off-Line Set-Up Helper position can be obtained by any employee that bids on the position, and is awarded based on seniority. (Def.'s Statement of Material Facts, ¶ 33.)

## E. Schooler's Bid for the Off-Line Set-Up Helper Position

Schooler successfully bid on the Off-Line Set-Up Helper position in August of 1994. (Def.'s Statement of Material Facts, ¶ 37.) After receiving the position, but before commencing work as the Off-Line Set-Up Helper, the position was eliminated. (Id. ¶ 38.) Schooler successfully grieved the elimination of the position through the grievance procedure authorized by Allied and the Union, and, as a result, she was reinstated in the Off-Line Set-Up Helper position on November 1, 1994. (Id. ¶¶ 39-40.)

Schooler was given a check covering her lost wages and overtime as a part of the settlement of the grievance. (Def.'s Statement of Material Facts, ¶ 41; Exs. 6-7.) The calculations for this check were performed by Allied employee Jerry Dykstra, and included both bonus and overtime pay for the time period of August 29, 1994 through October 31, 1994. (Id. ¶¶ 42-43.)[7] After Jerry Dykstra completed the calculations, payroll supervisor Judy Pruett made the payment to Schooler. (Id. ¶ 44.)

Schooler claims that she did not receive the proper amount to compensate her for her lost

---

[7] Schooler contends that the cited reference, Exhibit 12, does not support this statement, which is correct. Allied mislabeled its exhibits, and the correct exhibit number for the referenced exhibit is Exhibit 16.

bonus amounts. Schooler is not sure how much she should have received in back pay, bonuses and overtime, but believes that she should have received the same bonuses as others who worked in her same department. (Pl.'s Resp. Def.'s Statement of Material Facts, ¶¶ 48, 51.) Schooler does not know the amount of the bonuses received by others in her department for that time period. (Schooler Dep. at 107-112.)

Schooler argues in her opposition to summary judgment that she has presented an issue of material fact on this issue:

> The fact that Plaintiff does not know the amount of the mill production bonus earned by similarly situated male workers in her department . . . does not mean that Plaintiff has not presented a material issue regarding her entitlement to a mill production bonus which demands resolution at trial. Defendant only points out that Plaintiff could not identify the amount of the mill production bonus she lost. Defendant does not contend that Plaintiff was not entitled to a mill production bonus for the relevant time period, nor that Plaintiff could not prove at trial the amount of the lost mill production bonus sufficiently for a reasonable jury to find in her favor on that issue.

(Pl.'s Mem. Law Resp. Def.' Mot. Summ. J. at 3.) However, the statement illustrates a misunderstanding of a plaintiff's obligation in responding to a motion for summary judgment "to set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Discovery is now closed in this case, and if Schooler had evidence to support her claims that the bonus amount she received was incorrect, she should have presented it with her opposition to this motion. Therefore, while Schooler contends that the back pay and bonus amounts were miscalculated, the Court finds that she has presented no evidence to support this assertion, and that there is no issue of fact as to whether she received the correct amount of back pay, overtime, and bonuses in settlement of her grievance.

**F. Schooler's Bid for the Off-Line Set-Up Position**

Schooler bid for the Off-Line Set-Up position in December, 1997, and was not awarded the position. (Def.'s Statement of Material Facts, ¶ 57.) The stated reason for Allied's denial of her bid is that Schooler lacked the qualifications necessary pursuant to CBA 96. (Id. ¶ 58.) At the time that she bid on the position of Off-Line Set-Up, Schooler held the position of Off-Line Set-Up Helper. (Id. ¶ 59.) She had never held the title of Off-Line Set-Up. (Id. ¶ 63.) At the time she bid on the position, she had not completed the apprenticeship program for the position, nor was she enrolled in it. (Id. ¶¶ 64, 65.)

Schooler grieved the failure to receive the Off-Line Set-Up position upon which she attempted to bid in December of 1997. (Def.'s Statement of Material Facts, ¶ 66.) Allied rejected Schooler's grievance because Schooler lacked the qualifications necessary for the Off-Line Set-Up position. (Id. ¶ 67.) On July 20, 1998, the Union decided the withdraw its grievance filed on Schooler's behalf for her failure to receive the Off-Line Set-Up position. (Id. ¶ 68.) The parties dispute whether the Union withdrew its grievance because it believed the grievance had no merit, or because of other factors such as cost, the financial situation of the Union, or the existence of other grievances given a higher priority by the Union. (Id. ¶ 69; Pl.'s Resp. Def.'s Statement of Material Facts, ¶ 69.)

**G. The Award of the Off-Line Set-Up Position to Robert Delya**

If there are no qualified bidders for a craft position, Allied can place any apprentice in the position. (Def.'s Statement of Material Facts, ¶ 70.)[8] The Off-Line Set-Up position was given to

---

[8]Schooler disputes a footnote to this paragraph in Allied's Statement of Material Facts for the reason that a portion of it lacks a cited reference, but not the body of the paragraph itself. (Pl.'s Resp. Def.'s Statement of Material Facts, ¶ 70.)

Robert Delya ("Delya"), who was in the apprenticeship program at the time he received the

position.  (Id. ¶ 71.) More specifically, Delya was in the Tube Mill Set-Up apprenticeship

program at the time he was given the Off-Line Set-Up position.  (Id. ¶ 72.)


## II. **DISCUSSION**

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material

fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a

light most favorable to the non-moving party, a reasonable jury could return a verdict for the

non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A party opposing a

properly supported motion for summary may not rest upon mere allegations or denials of his

pleading, but must set forth specific facts showing there is a genuine issue for trial."  Id. at 256.

Allied raises two arguments in support of its summary judgment motion:  (1) Schooler's

claims of Title VII sex discrimination and retaliation regarding the Off-Line Set-Up Helper

position are moot because she was successful in her grievance regarding that position and she

received full back pay and overtime; and 2) Schooler fails to establish a prima facie case of Title

VII sex discrimination for not being awarded the Off-Line Set-Up position because she was not

qualified for that position under the governing CBA.  The Court will address each argument in

turn.

## A.    Sexual Discrimination

Title VII prohibits discrimination "against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . .

sex . . . ." 42 U.S.C. § 2000(e)-(2). The United States Supreme Court has established a

burden-shifting formula for determining discrimination claims under Title VII. McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  Under this formula, the plaintiff carries

the initial burden of demonstrating a prima facie case of discrimination. Id.  The plaintiff can

establish a prima facie case of discrimination by showing: "(1) she was a member of a protected

class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered

an adverse employment action; and (4) her employer treated similarly situated persons not in the

protected class more favorably." Simpson v. Borg-Warner Automotive, Inc., 196 F.3d 873, 876

(7th Cir. 1999.)  Once a plaintiff meets that burden, the burden shifts to the defendant "to

articulate a legitimate, non-discriminatory reason for its action."  Jones v. Jones Bros. Constr.

Corp., 879 F.2d 295, 299 (7th Cir.1989).

If the defendant meets this burden, the presumption of discrimination disappears and the

burden then shifts back to the plaintiff to show that the defendant's actions were a pretext for

discrimination.  Id.  The plaintiff can demonstrate pretext by showing either that the employer

was more likely than not motivated by a discriminatory reason or that the employer's explanation

is incredible.  Oxman v. WLS-TV, 846 F.2d 448, 453 (7th Cir.1988). The plaintiff may show that

the defendant's proffered reasons are incredible by establishing that "(1) they have no basis in

fact, or (2) they did not actually motivate the employer's decision, or (3) they were insufficient to

motivate the discharge." Jones, 879 F.2d at 299. Although this analysis delineates a shifting

burden of production on the parties, the ultimate burden at all times lies with the employee to demonstrate that the employer intentionally discriminated against her. Williams v. Williams Elec., Inc., 856 F.2d 920, 922 (7th Cir.1988).

## B.   Retaliation

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment practice [by Title VII]." 42 U.S.C. § 2000e-3(a).  In order to establish a prima facie case of retaliation, Schooler must show that:  1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action.  Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).  If Schooler establishes a prima facie case of retaliation, the burden shifts to Allied to produce a legitimate, nonretaliatory reason for the termination or adverse action.  Id.  If shown, the burden then shifts back to Schooler to show that Allied's proffered explanation is merely a pretext for retaliation.  Id.

## C. Schooler's Claims Relating to the Off-Line Set-Up Helper Position

Schooler asserts that the Off-Line Set-Up Helper position was eliminated after she bid for and was awarded the position because Allied preferred to fill the position with a man.  According to Schooler, subsequent to being awarded the position, she complained of discrimination to Allied's Human Resources Manager, Luther Bennet.  (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Facts, ¶¶ 86, 87.)  In Schooler's opinion, she was being discriminated against by being required to train for the position during first shift, when she was actually hired for the second shift helper position.  (Id.)  The day after Schooler filed her complaint, she was informed

by Potts that the position was being eliminated. (Id. ¶¶ 87, 88.) Schooler heard from Melvina Ely, the woman who was in second place after Schooler for the Off-Line Set-Up Helper position, that there were rumors that Allied did not want a woman in the position. (Id. ¶ 92.) Schooler also heard from Sylvester Givens that there were rumors that Plaintiff's position was being eliminated because she was female. (Id. ¶ 99.)[9]  From this, Schooler infers that the position was eliminated because of her gender and in retaliation for her complaint of discrimination.

Allied's motion for summary judgment only asserts one basis for granting summary judgment as to Schooler's claims of discrimination and retaliation regarding the Off-Line Set-Up Helper position. Allied argues that since Schooler was reinstated to the position, and given a check covering her lost wages and overtime for the period that the position was eliminated, her claims relating to this position are moot. Allied maintains that "where a plaintiff has received all of the requested relief to which she is legally entitled, there is no longer the requisite case or controversy, and the court is without jurisdiction." (Def.'s Reply Mem. Supp. Mot. Summ. J. at 7.) In support of its arguments, Allied cites to several cases addressing the requirement of an actual case and controversy for the court to have subject matter jurisdiction. See, e.g., Powell v. McCormack, 395 U.S. 486, 496 n.7 (1969); Jorman v. Veterans Admin., 830 F.2d 1420, 1424 (7th Cir. 1987); Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994); and Harrison v. United Mine Workers of America, 941 F.2d 1190, 1193 (11th Cir. 1991). Schooler responds to this argument by declaring that she is also entitled under Title VII to prejudgment interest and

---

[9]Allied objects to the two previous statements because they are not of "evidentiary quality," and because it believes they are not material to its motion for summary judgment. The Court does not address Allied's first objection because the statements are not material to the outcome of this motion.

-15-

punitive damages in addition to her lost overtime, back pay, and bonuses.

The Court agrees with Schooler that reinstatement, overtime, and back pay do not constitute "all of the requested relief to which [Schooler] is legally entitled." For example, if a jury found in her favor on this claim, it could award her damages for emotional distress. If any compensatory damages are awarded, the jury would then be entitled to award punitive damages. Furthermore, in her prayer for relief in her Complaint, Schooler requests injunctive relief against Allied to prevent it or its officers from engaging in further discriminatory practices. While lost overtime, back pay, and bonuses certainly comprise a portion of Schooler's potential damages, they are not the only forms of relief she could receive should she prevail on these claims at trial. The cases cited by Allied regarding mootness and the requirement of an actual case or controversy are therefore inapposite, as Schooler's claims are not moot.

Therefore, while this Court agrees with Allied that Plaintiff has not demonstrated that there is an issue of fact with regard to the amount of overtime, back pay, and bonuses she was given, the Court finds that she could be entitled to other forms of relief, including other forms of compensatory damages, punitive damages, and injunctive relief. Therefore, her claims for sexual discrimination and retaliation with regard to the Off-Line Set-Up Helper position are not moot. Because this is the sole basis asserted by Allied in support of its motion as to Schooler's claims regarding this position, Defendant's motion for summary judgment as to those claims is DENIED.

### D. Schooler's Claims Relating to the Off-Line Set-Up Position

Schooler asserts that she did not receive the Off-Line Set-Up position because of her gender in violation of Title VII. Allied contends that she did not receive the position because she

was not a qualified bidder in that she had not completed the apprenticeship, nor was she enrolled in the apprenticeship program. Furthermore, she had not previously been classified as the Off-Line Set-Up person, which is the only other way Schooler could be qualified for the position.

To establish a prima facie case of employment discrimination in a failure to promote claim, a plaintiff must establish that: (1) she was a member of a protected group; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the person who was promoted had the same or lesser qualifications than the plaintiff. See Ghosh v. Indiana Dep't of Envtl. Management, 192 F.3d 1087, 1091 (7th Cir.1999). The remainder of the McDonnell Douglas burden-shifting formula then applies. Schooler meets the first and the third prong of her prima facie case with respect to her failure to be awarded the Off-Line Set-Up position, and Allied has set forth a legitimate, nondiscriminatory reason for Allied's failure to award the position to Schooler. Here, there is no need to analyze the second and fourth prongs of the prima facie case and pretext separately. Schooler's assertion that she met the requirements for the position, and was more qualified than Robert Delya (to whom the position was awarded) overlaps with the pretext inquiry. Thus, the following analysis concentrates on whether Schooler has met her burden of demonstrating that Allied's stated reasons for failing to award her the Off-Line Set-Up position were a pretext for retaliation.

"Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir. 1996). Thus, "[t]he issue of pretext does not address the correctness or desirability of [the] reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." Miller, 203 F.2d at 1008-09.

Allied maintains that Schooler was not awarded the Off-Line Set-Up position because she was not a qualified bidder. As this Court has previously determined, there is no genuine issue of fact that, under CBA 96, Off-Line Set-Up is a craft position. In order to be a qualified bidder for a craft position, Schooler had to: 1) currently or previously have held the classification of Off-Line Set-Up; 2) have completed the apprenticeship program for that position; or 3) have been enrolled in the apprenticeship program at the time she bid on the position. (Def.'s Statement of Material Facts, ¶ 56.) Schooler does not contend that she completed the apprenticeship program or that she was enrolled in the apprenticeship program at the time she bid on the position. She does argue that she held the position previously, and that she therefore should have been awarded the position under the first criterion in CBA 96.

Schooler argues that she previously occupied the position of Off-Line Set-Up early in 1997. In January 1997, Leon Frison, who was in the Off-Line Set-Up position, went on medical leave. (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Facts, ¶ 148.) Schooler maintains that Dale Rowden assigned her to fill in for Frison, and that from time to time she worked by herself and performed the Off-Line Set-Up person's duties alone. (Id. ¶¶ 149-50.) According to Schooler, when she performed the duties of the Off-Line Set-Up person, she was "upgraded in classification" to receive a higher rate of pay. (Id. ¶¶ 150-51.)

However, Schooler produces no time cards, pay sheets or any other evidence to demonstrate that her classification was ever officially upgraded to Off-Line Set-Up. The cited reference for her statement that her classification was upgraded is Jim Sells' deposition, however, his testimony on the referenced page is that he was unaware that Schooler ever performed the duties of the Off-Line Set-Up person while she held the helper position. (Sells Dep. at 29.)

Jackson Potts did testify in his deposition that "from time-to-time" Schooler performed the duties of the Off-Line Set-Up position, and when that happened he would manually re-rate her timecard so that she would be paid at the Off-Line Set-Up rate for that period of time. (Potts Dep. at 29-30.) Schooler's employee status report does not indicate that Schooler ever held the classification of Off-Line Set-Up. (Def.'s Ex. 21.) The only classification she has held since 1994 is "Off Line Set Up Helper Mill #6." (Id.)

The fact that Schooler may have "filled in" for another employee in the Off-Line Set-Up position does not mean that she held the classification of that position, which is the requirement to be a qualified bidder. Therefore, Schooler cannot satisfy the second element of her prima facie case, that "she was qualified for the position sought." Nor can she satisfy the fourth element of her prima facie case, that "the person who was promoted had the same or lesser qualifications" than the plaintiff. The person who was given the position, Robert Delya, was in the apprenticeship program at the time he received the position, thereby meeting the third criterion under CBA 96.

Schooler is also unable to establish pretext, which requires that she demonstrate that Allied's stated reason for not awarding her the position is a lie. Allied has set forth the three ways an employee could be considered a "qualified bidder" for the position of Off-Line Set-Up, and Schooler simply was not qualified under CBA 96 despite her experience as Off-Line Set-Up Helper, and despite her being asked to fill in for Leon Frison on occasion. As Schooler can neither make out a prima facie case of discrimination, nor demonstrate that Allied's reason for not awarding her the Off-Line Set-Up position is pretextual, Allied's motion for summary judgment as to Schooler's gender discrimination claim relating to the Off-Line Set-Up position is

-19-

GRANTED.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. Defendant's motion is GRANTED as to Schooler's Title VII gender discrimination claim relating to the Off-Line Set-Up position, and DENIED as to Schooler's claims of Title VII gender discrimination and retaliation relating to the Off-Line Set-Up Helper position. Pursuant to Schooler's concession in her Response to Defendant's Motion for Summary Judgment, Defendant's motion is also GRANTED as to Schooler's claim of race discrimination.

E N T E R:

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

Dated: *Jan. 3, 2001*